## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

ZACHARY KRIESEL,

      Petitioner,

v.                                             No. 19-cv-0992 KG/SMV

MARK BOWEN,
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

      Respondents.

### <u>MAGISTRATE JUDGE'S PROPOSED FINDINGS<br>AND RECOMMENDED DISPOSITION</u>

THIS MATTER is before me on the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus [Doc. 1], filed by Petitioner on October 23, 2019.  Respondents answered the Petition on May 20, 2020.  [Doc. 10].  Petitioner filed no reply, and none is needed to decide this matter.  The Honorable Kenneth J. Gonzales, United States District Judge, referred this matter to me for analysis and a recommended disposition.  [Doc. 12].  I have considered the briefing, the relevant portions of the record in both the civil and criminal cases, and the relevant law.  Being otherwise fully advised in the premises, I recommend that the Petition be denied with prejudice.

### BACKGROUND

Petitioner was convicted in New Mexico state court of abusing a child under NMSA 1978, § 30-6-1(D).  *See* [Doc. 10-1] at 22.  "Abuse of a child consists of a person knowingly, intentionally[,] or negligently,[1] and without justifiable cause, causing or permitting a child to be . . . tortured, cruelly confined[,] or cruelly punished . . . ."  NMSA 1978, § 30-6-1(D)(2).  "If

---

[1] The New Mexico Supreme Court has clarified that "negligently," as defined in this statute, equates to a mens rea of "reckless disregard."  *See State v. Montoya*, 2015-NMSC-010, ¶ 14, 345 P.3d 1056.

the abuse results in great bodily harm to the child, the person is guilty of a first[-]degree felony." *Id.* § 30-6-1(E).

This case stems from Petitioner's supervision of his ex-fiancée Ashley Garcia's two children, Areana Garcia (then four-and-a-half years old) and Andree Garcia (then 19 months old), from August 1, 2011, through August 3, 2011. *See* [Doc. 11-1] at 152–53, 155–58; [Doc. 11-3] at 31–32; [Doc. 11-4] at 23, 134. During that time, Petitioner exclusively watched the children while Ashley worked.[2] *See* [Doc. 11-6] at 79.

On August 3, 2011, Petitioner texted Ashley, who was at work at the time, that Areana had hit Andree with a toy. [Doc. 11-1] at 157. When Ashley returned home from work, Andree "was slumped over" and "struggling to breathe." *Id.* at 157–58. He "was throwing up green stuff everywhere. He was not even moving." *Id.* at 158–59.

Ashley immediately took Andree to his pediatrician. *See id.* at 159. En route, she observed that Andree had "bruises all over his body." *Id.* Days before, when bathing Andree, Ashely had noticed no bruises. *Id.* at 130–31. The pediatrician rushed Andree to the hospital upon observing his condition. *See id.* at 159. At the hospital, a doctor performed surgery on Andree's small intestine, removing "about 10 or 11 inches of small bowel." [Doc. 11-4] at 33. Andree was also diagnosed with subdural hematoma, or internal bleeding in the head. *See* [Doc. 11-1] at 87–88. His doctor later testified that significant force likely caused the subdural hematoma. *See id.* at 85, 87. Andree did not die from his injuries.

On August 18, 2011, Petitioner was indicted on one count of violating § 30-6-1(D) by "intentionally . . . caus[ing] Andree Garcia, a child under the age of eighteen years, to be

---

[2] Petitioner identifies no relevant event that occurred when Ashley returned home from work during this period.

tortured, cruelly confined[,] or cruelly punished, which resulted in great bodily harm." [Doc. 10-1] at 1.  The indictment did not mention a reckless-disregard mens rea.  *See id.*

At trial, Petitioner argued that someone else caused Andree's injuries, such as when Areana allegedly hit him with a toy.  *See* [Doc. 11-6] at 170–71.  The state court admitted testimony from Dr. Susan Williamson, a radiologist, who testified that Andree had abnormalities in his extremities.  [Doc. 11-2] at 12–14.  Petitioner later moved to strike Dr. Williamson's testimony, *id.* at 41–42, but the court denied the motion, *id.* at 42.

Petitioner requested that the trial court instruct the jury that he could not be found guilty unless he "acted intentionally."  *See* [Doc. 10-1] at 80.  Yet, the court instead used the below instruction, modeled on New Mexico Uniform Jury Instruction 14-615:

> For you to find [Petitioner] guilty of child abuse resulting in death or great bodily harm, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1.      [Petitioner] struck or caused Andree Garcia to be struck in the head and abdomen;
> 2.      By engaging in the conduct described in Paragraph 1, [Petitioner] caused Andree Garcia to be tortured or cruelly punished;
> 3.      [Petitioner] showed a reckless disregard for the safety or health of Andree Garcia.  To find [Petitioner] showed a reckless disregard, you must find that [his] conduct was more than merely negligent or careless.  Rather, you must find that [he] caused a substantial and unjustifiable risk of serious harm to the safety or health of Andree Garcia.  A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Petitioner] out of concern for the safety or health of Andree Garcia;
> 4.      [Petitioner]'s conduct resulted in great bodily harm to Andree Garcia;
> 5.      Andree Garcia was under the age of eighteen (18);
> 6.      This happened in New Mexico on or about August 3, 2011.

[Doc. 10-1] at 18; *see* UJI 14-615 NMRA.  The court overruled Petitioner's objection that the instruction should have included only an intentional mens rea, not a mens rea of reckless

disregard.  *See* [Doc. 11-6] at 133–35.  The State argued that though little direct evidence connected Petitioner to Andree's injuries, no one else could have caused them.  *Id.* at 152–55.

The jury found Petitioner guilty.  [Doc. 10-1] at 22.  He was sentenced to 12 years' imprisonment.  [Doc. 1] at 1.  He appealed his conviction on four grounds: (1) the trial court erred (a) by giving the jury instruction with a reckless-disregard mens rea when the State had allegedly advanced a theory of the case based only on intentionality, and (b) by giving a jury instruction that confusingly included both intentional and reckless mens reas; (2) insufficient evidence existed to convict him; (3) the trial court erred in admitting Dr. Williamson's testimony; and (4) the conviction resulted from cumulative error.  *Id.* at 38–39.

The New Mexico Court of Appeals affirmed.  It held that the trial court committed no error in using the jury instruction at issue and that the instruction would not have confused the jury.  *Id.* at 246–49.  It then found that sufficient evidence existed to support the conviction.  *Id.* at 249–51.  Next, it declined to review Petitioner's arguments about the admission of Dr. Williamson's testimony because he (1) failed to cite to the portions of the record where he preserved his objection to it, (2) failed to cite to applicable case law, and (3) failed to develop his argument—all in violation of New Mexico Rule of Appellate Procedure 12-318(A)(4).  *Id.* at 251–52.  As it found no error, it rejected Petitioner's claim of cumulative error.  *Id.* at 252.

Petitioner did not petition the New Mexico Supreme Court for review of this decision.  *See id.* at 278–79.  Rather, he filed the instant Petition under § 2254 pro se in federal court. [Doc. 1].  He repeats here the same four arguments he raised before the court of appeals.  *See id.*

4

## STANDARD OF REVIEW

28 U.S.C. § 2254 permits a person "in custody pursuant to the judgment of a [s]tate court" to apply for a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2018). "[F]ederal habeas corpus relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law issues." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A habeas applicant cannot "transform a state[-]law claim into a federal one merely by attaching a due-process label" to it. *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017). "Otherwise, 'every erroneous decision by a state court on state law would come to [federal court] as a federal constitutional question.'" *Id.* (alteration in original) (quoting *Gryger v. Burke*, 334 U.S. 728, 731 (1948)). Because Petitioner proceeds pro se, I must liberally construe his pleadings, but I cannot assume the role of advocate on his behalf. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## ANALYSIS

### A.   Though Petitioner fails to show that he exhausted state remedies, the Court should deny relief on the merits.

"A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994).

> An application for a writ of habeas corpus . . . shall not be granted unless it appears that—
> (A) the applicant has exhausted the remedies available in the courts of the [s]tate; or
> (B)(i) there is an absence of available [s]tate corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

§ 2254(b)(1).  Generally, a petitioner in a § 2254 case does not exhaust his claims unless he presents them in a petition for review before the state's highest court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–47 (1999); *Gonzales v. McKune*, 279 F.3d 922, 924 (10th Cir. 2002).

Because Petitioner did not petition the New Mexico Supreme Court for review of the decision affirming his conviction, he did not exhaust state remedies prior to filing this action. Petitioner appealed his conviction to the New Mexico Court of Appeals, arguing that the trial court erred for the same four reasons present in this action.  *See* [Doc. 10-1] at 40–55.  The New Mexico Court of Appeals rejected these arguments and affirmed the conviction on August 23, 2019.  *See id.* at 239–52, 279.  The docket related to this appeal reflects no petition for certiorari filed based on the New Mexico Court of Appeals' decision, *see id.* at 279, and the record does not show any habeas petition filed in state court.[3]

Petitioner has not yet sought discretionary review from the New Mexico Supreme Court for the claims expressed in this Petition.  Nor has he shown the absence of a remedy in state court or that the circumstances render the state-court remedy ineffective.  *See* § 2254(b)(1)(b). The Petition is therefore subject to dismissal for failure to exhaust state remedies.

Though Petitioner failed to exhaust his claims, the Court may still deny the Petition with prejudice under appropriate circumstances.  *See id.* § 2254(b)(2).  Because the exhaustion doctrine is based on principles of comity, it is not jurisdictional.  *Harris*, 15 F.3d at 1554.  When faced with an unexhausted petition, the "court should determine whether the interests of comity

---

[3] Petitioner incorrectly argues that he appealed the decision based on a petition for certiorari filed with the New Mexico Supreme Court on February 12, 2018.  [Doc. 1] at 2–3.  There, he appealed only the court of appeals' decision to affirm the denial of his release pending the appeal.  *See* [Doc. 10-1] at 254–56.  He never appealed the August 23, 2019 decision on the four grounds for relief offered in this Petition, and he could not have; in February of 2018, the New Mexico Court of Appeals had not yet affirmed his conviction.  *See id.*

and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." *Granberry v. Greer*, 481 U.S. 129, 134 (1987).[4]  If the petition concerns an issue "on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis." *Id.* at 134–35.  "On the other hand, if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the [parties], the state courts, and the federal courts will all be well served even if . . . the district court denies the [unexhausted] habeas petition . . . ." *Id.* at 135; *see id.* at 133 ("[I]f the court . . . is convinced that the petition has no merit, a belated application of the exhaustion rule might simply require useless litigation in the state courts.").[5]

Respondents request that the Court reach the merits of Petitioner's unexhausted claims. [Doc. 10] at 8, 11 n.7.  For this reason, and the reasons explained below, I recommend denying the Petition with prejudice because Petitioner fails to raise a colorable federal claim.

## B.    Petitioner does not advance a colorable federal claim.

Petitioner does not directly respond to the New Mexico Court of Appeals' disposition of any of the issues raised here.  Rather, he re-argues that his conviction should be overturned.  First, he argues that insufficient evidence existed to convict him of child abuse.  [Doc. 1] at 32–34.  Second, he argues that by issuing a jury instruction using a reckless-disregard mens rea, not an intentional mens rea, the trial court deprived him of due process.  *Id.* at 23–32.  Third,

---

[4] Though the Supreme Court decided *Granberry* before Congress passed the Antiterrorism and Effective Death Penalty Act, it remains in force today.  *See Moore v. Schoeman*, 288 F.3d 1231, 1234 (10th Cir. 2002).
[5] District courts may deny petitions containing both exhausted and unexhausted claims on the merits.  *See Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009).

Petitioner contends that the admission of certain medical evidence violated his right to due process.  *Id.* at 34–35.  Finally, he argues that, together, these alleged errors constitute cumulative error.  *Id.* at 35.  For the following reasons, each of these arguments lacks merit.

> **1.    Sufficient evidence existed to convict Petitioner of child abuse.**

Petitioner urges the Court to vacate his conviction because the record contained insufficient evidence to convict him.  [Doc. 1] at 33–34.  He contends:

> The State's case was based almost entirely on medical evidence because there was no evidence to link the child's injuries to the Petitioner.  Even the [S]tate in its closing argument was forced to admit that no one knows what happened during the critical three-day period prior to August 3rd.
> The State's theory was that the injuries are apparent, and the only reasonable explanation is that they had to have been caused by Petitioner, even though there is no evidence that he caused them . . . .
> There was insufficient evidence as a matter of law to support the jury's verdict and the court's judgment of conviction. . . .
> The evidence in this case is insufficient as a matter of law.

*Id.*  He argues nothing more.  Sufficient evidence exists to support a conviction when "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Under any standard of review, Petitioner's argument does not justify relief.  First, at no point does he explain why the State's theory—that though no one knows the precise mechanism by which Petitioner abused Andree, no one else could have caused Andree's injuries—is insufficient to support a conviction.  *See* [Doc. 1] at 33–34.  Petitioner simply asserts that the alleged lack of direct evidence linking him to the injuries means insufficient evidence existed to

convict him.   Yet, circumstantial evidence may support a conviction under § 30-6-1.   *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056.

Second, sufficient evidence existed to convict Petitioner.   He challenges none of the following evidence: (1) Areana testified that while Ashley worked, Andree "got hit by someone" other than herself, [Doc. 11-3] at 132–33; (2) no one else was with Andree at that time besides Areana and Petitioner, [Doc. 11-6] at 79; (3) Areana denied hitting Andree with a toy, *see* [Doc. 11-3] at 133–34; and (4) medical testimony confirmed that a four-year-old like Areana could not cause Andree's injuries, *see* [Doc. 11-2] at 94, 98–99, 103, 111–12, 116.   Additionally, medical testimony revealed that Andree suffered from severe intestinal injuries requiring surgery.   [Doc. 11-4] at 33.   The surgeon testified that Andree suffered the injury within 24 hours of the surgery—during the time Petitioner exclusively cared for Andree.[6]   *See* [Doc. 11-3] at 114. A pediatrician testified that Andree suffered a severe head injury consistent with his "[being] shaken and thrown into a wall . . . [b]y an adult."   [Doc. 11-2] at 98.   The pediatrician testified that other hypothetical explanations for the injuries—such as that Andree had fallen while running or from a table—were "unlikely causes of the type of subdural hematoma that [he] had." *Id.* at 99.   Viewed in the light most favorable to the government, this evidence permits a rational trier of fact to find beyond a reasonable doubt that, as the only adult supervising Andree during the relevant time period, Petitioner intentionally or recklessly caused Andree's injuries.

Petitioner fails to explain how the New Mexico Court of Appeals erred, does not challenge the wealth of evidence supporting his conviction, and fails to explain why the State's

---

[6] According to the surgeon, Andree "wouldn't have survived days with" the intestinal injury.   [Doc. 11-3] at 114.

circumstantial trial strategy necessarily shows that insufficient evidence existed.  I recommend rejection of Petitioner's argument that insufficient evidence supported his conviction.

> **2.    The propriety of the reckless-disregard jury instruction under state law does not state a claim under § 2254, and Petitioner fails to show that its use violated any federal constitutional right.**

I will group Petitioner's arguments against the jury instruction used at trial into three categories.  First, Petitioner argues that because the indictment against him specified that he "intentionally" abused Andree, [Doc. 10-1] at 1, and because the State apparently argued an intentional theory of the case throughout trial, it could not then change its theory of the case when requesting a jury instruction based on a different mens rea, reckless disregard, [Doc. 1] at 29–30.  Second, Petitioner contends that the jury instruction was confusing to a reasonable juror because it included elements of both an intentional and reckless-disregard mens rea.  *Id.* at 23, 28–29.  Third, he argues that the instruction did not allow the jury to unanimously find that the State had proven each element of the offense beyond a reasonable doubt: As the instruction allegedly contained both intentional and reckless-disregard mens reas, some members of the jury could have found that Petitioner committed child abuse intentionally, while others could have found that he did so recklessly.  *Id.* at 31–32.  Petitioner fails to show that any of these arguments justifies federal habeas relief.

Section 2254 does not provide relief from errors of state law.  *Estelle*, 502 U.S. at 68.  Though "[e]xamples of state[-]law decisions that may violate due process include erroneous jury instructions," *Leatherwood*, 861 F.3d at 1043, "the fact that the instruction was allegedly incorrect under state law is not [alone] a basis for habeas relief," *Estelle*, 502 U.S. at 71–72.

**I.      The State's allegedly changing theory of the case**

As to Petitioner's first argument, the alleged error in using the reckless-disregard jury instruction is a state-law argument.   Additionally, Petitioner fails to show that the trial court erred in issuing the instruction and that, even if the instruction was improper, its use violated due process.   Petitioner argues the State had advanced only an intentional theory of child abuse, and the trial court erred by using a jury instruction with a different mens rea.   [Doc. 1] at 29–30.   Yet, before the New Mexico Court of Appeals, Petitioner advanced this same argument, [Doc. 10-1] at 137–39, and the court rejected it after interpreting New Mexico statutes, cases, and jury instructions.

The New Mexico Court of Appeals held that "even if we adopt [Petitioner]'s view that the State presented an intentional theory only . . . we recognize no error in the jury instruction's use." *Id.* at 248.   It noted that the trial court based the instruction on New Mexico Uniform Jury Instruction 14-615.   *Id.*   Relying on committee commentary for the jury instructions related to child-abuse charges, the New Mexico Court of Appeals found that "the 'reckless disregard' language . . . is proper even in cases where the State's theory is based on intentional child abuse." *Id.*   The commentary explained that the jury instruction used only a recklessness mens rea because "evidence that the defendant's conduct was . . . intentional will meet the reckless disregard standard." *Id.* (quoting UJI 14-611 NMRA commentary).

The court then cited to a state supreme court case discussing the jury instructions used in a child-abuse case, stating that this case "buttressed" its decision.   *Id.* (citing *Montoya*, 2015-NMSC-010, ¶ 33).   *Montoya* relied on state case law in holding that the "distinction between reckless and intentional conduct . . . is often immaterial when the child abuse does not

[as here] result in the death of a child under twelve." *Montoya*, 2015-NMSC-010, ¶ 33.   It distinguished between cases involving the death of a child and those where the child did not die: Under New Mexico law, when the child has died, proof that the defendant intentionally killed her would result in a higher sentence than if the defendant recklessly killed her. *Id.* In cases that involve only great bodily harm—not death—the sentence is the same regardless of whether the defendant abused the child intentionally or recklessly. *Id.* Here, the New Mexico Court of Appeals concluded that "the use of the jury instruction . . . was proper even if the State advanced an intentional theory of child abuse. . . . [I]t is immaterial whether the State's theory was one of intentional or reckless child abuse.   Therefore, [it] conclude[d] there was no error in the instruction's use." [Doc. 10-1] at 248–49.

I recommend rejecting Petitioner's argument that the State's allegedly changing theory of the case entitles him to habeas relief because this is a state-law claim.   At bottom, Petitioner argues that because the State indicted him on a theory of intentional child abuse, it cannot then give jury instructions with a recklessness mens rea.   Yet, the New Mexico Court of Appeals, applying state law, found that a recklessness instruction is proper under New Mexico law "even if the State advanced an intentional theory of child abuse." *Id.* The propriety of a recklessness instruction under New Mexico law does not raise a federal issue, notwithstanding Petitioner's fleeting citation to various federal constitutional provisions or his single use of the phrase "due process." *See Estelle*, 502 U.S. at 71–72; *Leatherwood*, 861 F.3d at 1043; [Doc. 1] at 5, 23.

Even if I found that Petitioner had raised a federal issue, he has not shown that any error in the jury instruction amounts to a violation of federal due process.   A federal court may grant habeas relief based on an erroneous state jury instruction only when the petitioner meets a

"heavy burden," *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995), of showing that the "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated [due process]." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (quoting *Cupp*, 414 U.S. at 146). When considering whether an instruction infected the entire trial, a court must consider it "in the context of the entire record, including testimony and the argument of counsel." *Hunt v. Okla.*, 683 F.2d 1305, 1310 (10th Cir. 1982). Finally, even where a petitioner shows that an erroneous jury instruction violated due process, he faces a second hurdle: He may obtain relief only if the constitutional error was not harmless, i.e., the unconstitutional jury instruction "had a substantial and injurious effect or influence in determining the jury's verdict."[7] *Valdez v. Bravo*, 244 F. App'x 864, 868 (10th Cir. 2007). The government bears the burden to show that the constitutional error was harmless. *United States v. Schneider*, 665 F. App'x 668, 673 (10th Cir. 2016).

Courts often decline to find that an erroneous jury instruction infected the entire trial when the instruction did not prevent the defendant from presenting his defense. *See Maes*, 46 F.3d at 984–85. Moreover, "[a]lthough the sufficiency of the evidence does not alone eliminate the possibility of a due[-]process violation, [if] the strength of the evidence supports the conclusion that the actual verdict entered in this case was not the result of an" erroneous jury instruction, then it becomes harder to show a due-process violation. *Valdez*, 244 F. App'x at 870; *see Turrentine v. Mullin*, 390 F.3d 1181, 1191 (10th Cir. 2004) (holding that an error in a

---

[7] The harmless-error analysis often overlaps with the due-process inquiry. *Valdez*, 244 F. App'x at 868.

jury instruction defining the requisite intent did not infect the whole trial because "ample evidence supported the conclusion that [the petitioner] intended to kill his victims"); *Griffin v. LeMaster*, No. 97-cv-1560 MV/RHS, 2004 WL 7337893, at *11 (D.N.M. Aug. 25, 2004) (finding that a jury instruction erroneously describing the requisite intent did not amount to a due-process violation when significant evidence showed that the petitioner had such intent). The Tenth Circuit has also considered whether, despite a prosecution's alleged switching of its theory of the case, the petitioner nonetheless had notice of the theory it ultimately advanced. *See Lott v. Trammell*, 705 F.3d 1167, 1189 (10th Cir. 2013).

Petitioner fails to show that a violation of federal due process occurred because (1) he fails to show that the trial court erred in using the recklessness instruction, and (2) even if the trial court erroneously used the recklessness instruction, Petitioner fails to show that it infected the entire trial. Finally, even if the instruction violated due process, any error was harmless.

> **i.    Petitioner fails to show that the trial court erred in giving the recklessness instruction. Because the trial court committed no error in using the instruction, its use here does not violate due process.**

To successfully argue that a due-process violation occurred, Petitioner must first show that the challenged instruction was erroneous given the State's theory of the case. *See Cupp*, 414 U.S. at 147; *Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005); *Maes*, 46 F.3d at 984. Petitioner argues that, as a matter of state law, the trial court improperly used the recklessness instruction when the State had advanced an intentional theory of child abuse. *See, e.g.*, [Doc. 1] at 30. He believes that the jury instruction was improper given that the State had indicted him on an intentional theory of child abuse and had, at times during the trial, argued that he intentionally abused Andree. *See id.* at 23–30. He then seems to extrapolate a due-process violation from the

14

failure to give an intentional mens rea instruction.  *See id.*  I therefore must first determine whether the trial court improperly instructed the jury.

As explained, the New Mexico Supreme Court has held that the "distinction between reckless and intentional conduct . . . is often immaterial when the child abuse does not [as here] result in the death of a child under twelve." *Montoya*, 2015-NMSC-010, ¶ 33.  *Montoya* found this distinction immaterial in part because when the child has not died, the defendant's sentence would be the same regardless of whether he intentionally or recklessly abused the child.  *See id.* The commentary for the pattern jury instructions related to § 30-6-1, citing *Montoya*, notes that the drafters of the instructions declined to provide separate instructions for intentional and recklessness child abuse in cases where the child did not die.  *See* UJI 14-612 NMRA commentary (citing *Montoya*, 2015-NMSC-010, ¶ 33).  The New Mexico Supreme Court has only required a separate jury instruction for intentional conduct in the unique circumstance "[w]hen two or more different or inconsistent acts or courses of conduct are advanced by the State as alternative theories as to how [the] child's injuries occurred."  *State v. Consaul*, 2014-NMSC-030, ¶ 23, 332 P.3d 850.  After reviewing the relevant statutes, jury instructions, and precedent, the New Mexico Court of Appeals concluded in this case that the trial court properly gave the recklessness instruction even if the State advanced only an intentional theory of child abuse.  [Doc. 10-1] at 248–49.

Petitioner fails to demonstrate why his case represents the unique one where the court must give separate instructions for intentional conduct.  Rather than explaining how the New Mexico Court of Appeals erred, he copies—virtually word-for-word—the arguments advanced by his attorneys on direct appeal.  *Compare* [Doc. 1] at 23–30 (the Petition), *with*

[Doc. 10] at 130–39 (Petitioner's Brief in Chief on appeal). This tactic shows neither how the court of appeals erred nor why this Court should stray from *Montoya*'s directive that in cases where the child did not die, the distinction between reckless and intentional conduct is "immaterial." *Montoya*, 2015-NMSC-010, ¶ 33. Moreover, the State here did not advance two or more different or inconsistent courses of conduct that caused Andree's injuries. It simply argued that the circumstantial evidence showed that Petitioner intentionally or recklessly caused Andree to suffer great bodily harm. *See* [Doc. 10] at 15–17. The exception identified in *Consaul* therefore does not apply. *See Consaul*, 2014-NMSC-030, ¶¶ 23–26 (holding that the trial court should have given separate mens rea jury instructions when the state argued that the defendant intentionally suffocated the infant by placing a pillow over his head or, alternatively, accidentally swaddled him too tightly). In sum, various state authorities all point in the same direction: The trial court properly instructed the jury on the mens rea applicable to this offense.

Because Petitioner fails to show that this instruction was improper under state law, his due-process challenge to its use necessarily fails, even if the State shifted its theory of the case. *See Cupp*, 414 U.S. at 147; *Parker*, 394 F.3d at 1319; *Maes*, 46 F.3d at 984; *see also Robison v. Ward*, 232 F. App'x 785, 789 (10th Cir. 2007).

> **ii.** **Petitioner fails to show that the jury instruction, even if erroneous, infected the entire trial. Additionally, any error caused by the instruction was harmless.**

Assuming Petitioner convinced me that the jury instruction was erroneous, however, his due-process challenge would still fail. He fails to meet his heavy burden to show the allegedly erroneous reckless-disregard instruction infected the entire trial because (1) the distinction between intentionality and recklessness did not unconstitutionally interfere with presentation of

16

Petitioner's defense, (2) ample evidence supported a conviction under either theory of mens rea, and (3) Petitioner had at least some notice the State could pursue a recklessness theory.

First, the distinction between intentionality and recklessness had little effect on Petitioner's core defense: that he did not cause Andree's injuries. In his opening statement, Petitioner focused mainly on the facts allegedly showing that Areana caused Andree's injuries. *See, e.g.*, [Doc. 11-1] at 17–19, 21–22, 26. He believed the evidence would show that Areana frequently hit Andree and threw things into Andree's bed. *Id.* at 18–19. Petitioner's closing argument contained virtually identical arguments. He spent most of his closing argument attacking the causation element. *See* [Doc. 11-6] at 168–83. He emphasized that the "State did not eliminate any of the causes [of Andree's injuries]." [Doc. 11-6] at 167. He again attempted to convince the jury that Areana caused Andree's injuries. *Id.* at 184–85. Petitioner also argued that Andree could have received his injuries at a prior trip to his grandmother's house. *Id.* at 170. He contested doctors' testimony that Andree's injuries occurred during the time when he had cared for Andree. *See, e.g.*, *id.* at 173–75. Petitioner noted the lack of DNA evidence connecting him to the injuries. *Id.* at 188.

Petitioner also offered other defenses throughout trial. He repeatedly emphasized how much he allegedly cared for Andree. [Doc. 11-1] at 17, 20–21, 24; [Doc. 11-6] at 169. Petitioner argued that some of Andree's injuries did not constitute great bodily harm. [Doc. 11-6] at 168. Near the conclusion of his closing argument, he suggested that Ashley recognized, based on Andree's injuries, that she could lose custody of her children and attempted to throw Petitioner under the bus. [Doc. 11-6] at 191–95.

17

These arguments bear little, if any, relation to Petitioner's mens rea. Causation is a separate element from mens rea.[8]  *See* [Doc. 10-1] at 18. Petitioner's other defenses do not distinguish between an intentional or reckless mens rea. If he loved Andree, a jury could infer that he would be less likely either to hurt Andree intentionally or become reckless with Andree's safety. Whether the injuries constituted great bodily harm, and Ashley's credibility, have no effect on Petitioner's mens rea. Ultimately, Petitioner made few, if any, arguments about his mens rea—intentional or otherwise—during the trial, and a jury instruction erroneously identifying his mens rea would have had a trivial effect on his strategy.

Second, as noted earlier, ample evidence showed that Petitioner abused Andree, whether intentionally or recklessly. *See supra* Section B.1. This evidence included that for virtually all of a three-day period, Petitioner and Areana were the only persons present with Andree. [Doc. 11-6] at 79. Medical testimony showed that Areana could not have caused Andree's very severe injuries. *See, e.g.*, [Doc. 11-2] at 94, 98–99, 103, 111–12, 116. This evidence suggests that Petitioner either intentionally abused Andree—one doctor testified that Andree's head injury was consistent with an adult shaking him and throwing him into a wall, *id.* at 98—or disregarded a substantial and unjustifiable risk to Andree's health. The strength of the evidence supporting a conviction under either an intentional or reckless-disregard theory weighs against finding that the mens rea instruction infected the entire trial.[9]

---

[8] I recognize that Petitioner's argument that Areana caused Andree's injuries could potentially fit under a recklessness theory: If, hypothetically, Petitioner ignored Areana's violent outbursts, he arguably overlooked a substantial and unjustifiable risk of serious harm to Andree. Yet, Petitioner identifies no evidence suggesting that a previous outburst of Areana had caused Andree to have the severe injuries he suffered here. And contrary to Petitioner's theory, Areana testified that she never hit Andree with a toy. [Doc. 11-3] at 133–34. Petitioner cites to no record evidence showing that Areana physically touched Andree in any way while he watched them.

[9] The punishment here for a conviction based on intentional child abuse is the same as a conviction for reckless child abuse. *Montoya*, 2015-NMSC-010, ¶ 33. Petitioner therefore fails to show the error affected the entire trial where,

Third, Petitioner had at least some notice that the jury could be instructed on a recklessness theory.  The State presented such a theory in its opening statement.  [Doc. 11-6] at 6.  Additionally, the New Mexico Supreme Court does not require separate instructions for intentional and reckless mens reas when the abuse did cause a child's death.  *Montoya*, 2015-NMSC-010, ¶ 33.  Because the trial court, under New Mexico Supreme Court precedent, needed not give separate instructions, Petitioner should have been prepared to defend against the elements outlined in the pattern jury instruction used by the trial court here—which included a recklessness mens rea.  *See* [Doc. 10-1] at 18; UJI 14-615 NMRA.  Finally, Petitioner does not contend that any evidence presented by the State surprised him.  The State relied on the same evidence to support either an intentional or recklessness theory.  Petitioner had notice to defend against that evidence, and he did so, though unsuccessfully.

Petitioner does not explain how the State's alleged eschewing of its intentional theory of guilt infected the entire trial.  For the above reasons, Petitioner fails to show that the jury instruction, even if erroneous, infected the entire trial.  Additionally, for the same reasons, the instruction did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Habeas relief is not warranted.[10]

---

had the trial court used a jury instruction based on an intentional theory, sufficient evidence existed to convict him of a charge for which his punishment would have been the same.

[10] Arguably, I could liberally construe Petitioner's pro se claim as one of constructive amendment.  He argues that the jury instruction did not match the mens rea listed on the indictment.  [Doc. 1] at 29–30.  Early in his Petition, he states that the use of the jury instruction here violated the Fifth and Sixth Amendments.  *Id.* at 5.  The Fifth and Sixth Amendments prohibit constructive amendment of an indictment, defined as "when the evidence presented at trial, together with the jury instructions, 'so alter[s] [the indictment] as to charge a different offense from that found by the grand jury.'"  *United States v. Farr*, 536 F.3d 1176, 1180 (10th Cir. 2008) (alterations in original) (quoting *United States v. Miller*, 471 U.S. 130, 144 (1985)).

## II.        Juror Confusion

Petitioner argues that the instruction here confused the jury by "comingling two different theories [of mens rea]—intentional act and reckless disregard." [Doc. 1] at 28.  He believes Paragraph 1 of the instruction reflected an intentional theory of child abuse because it stated, "[Petitioner] struck or caused Andree Garcia to be struck in the head and abdomen." [Doc. 10-1] at 18.  He believes this instruction contradicted the reckless disregard instruction in Paragraph 3:

> [Petitioner] showed a reckless disregard for the safety or health of Andree Garcia. To find [Petitioner] showed a reckless disregard . . . you must find that [he] caused a substantial and unjustifiable risk of serious harm to the safety or health of Andree Garcia.  A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Petitioner] out of concern for the safety or health of Andree Garcia.

*Id.*

Contrary to Petitioner's assertion, Paragraph 1 does not "direct[] the reasonable juror to a theory of intentional conduct." [Doc. 1] at 28.  As the New Mexico Court of Appeals noted, the word "intentional" does not appear in Paragraph 1 of the instruction—or anywhere else in the

---

Though I must liberally construe Petitioner's claims, that does not permit me to advance arguments that he has not raised.  *Stallings v. Progene Biomedical IBT Reference Lab*, 203 F. App'x 190, 192 (10th Cir. 2006).  In neither his briefing before the state court nor his Petition has he argued that the jury instructions constructively amended the indictment against him.  I decline to construe his Petition as advancing that argument.

Even if I considered this argument, I would recommend rejection of it.  A petitioner in a § 2254 case cannot rely on the Fifth Amendment's prohibition on constructive amendments because this prohibition derives from the Fifth Amendment's Grand Jury Clause, which does not apply to state proceedings.  *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Farr*, 536 F.3d at 1179; *Bae v. Peters*, 950 F.2d 469, 477–78 (7th Cir. 1991).  The prohibition on constructive amendments also derives from the "Sixth Amendment's assurance of a defendant's right 'to be informed of the nature and cause of the accusation' against him."  *Farr*, 536 F.3d at 1179 (quoting U.S. Const. amend. VI).  Yet, Petitioner fails to show that he lacked notice of the nature and cause of the charge against him.  As explained, the New Mexico Supreme Court has held that if the State indicts someone on a count of child abuse when the child did not die, the trial court need not give separate instructions for intentional and reckless mens reas.  *Montoya*, 2015-NMSC-010, ¶ 33.  This ruling should have put Petitioner on notice to defend against the pattern jury instruction used here.  Finally, for the reasons explained in this section, I do not recommend finding that any error "had [a] substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776).

instruction.  *See* [Doc. 10-1] at 18; *id.* at 246.  Moreover, a person can recklessly strike or cause somebody to be struck; that one person struck another does not solely connote intentionality. The jury instruction contained no internal ambiguity.  It therefore could cause no confusion.[11]

### III.    Juror Unanimity

Petitioner argues that his "right to due process was violated insofar as he was deprived of liberty without a finding beyond a reasonable doubt of each essential element of the offense of conviction."  [Doc. 1] at 31.  He believes that the jury instruction permitted the jury to find him guilty without unanimity because some jurors could have found him guilty of intentional child abuse, while others could have found him guilty of reckless child abuse.  *See id.* at 31–32.

Petitioner's argument that the jury did not unanimously agree on its guilty verdict rests on his assertion that the jury instruction confusingly advanced theories of both intentional and reckless-disregard mens rea.  *See id.* at 31–32.  For the same reasons listed above, I recommend rejecting this argument: The jury instruction pointed only toward a reckless-disregard mens rea.

Petitioner also contends that the instruction permitted the jury to find him guilty without unanimity for a second, less clear reason.   He argues, "When two or more different or inconsistent acts or course[s] of conduct are advanced by the State as alternative theories as to how a child's injuries occurred, then the jury must make an informed and unanimous decision, guided by separate instructions, as to the culpable act the defendant committed . . . ."  *Id.* at 31.

---

[11] Petitioner also asserts that "[i]n addition to mixing two different theor[ies] as to the essential element of mens rea, the instruction given to the jury provided no step-down instruction."  [Doc. 1] at 30.  Petitioner argues nothing more. A step-down instruction is a jury instruction directing the jury to make a finding about a lesser-included offense. *See Montoya*, 2015-NMSC-010, ¶ 42.  I reject this argument as conclusory.  Moreover, it appears that Petitioner believes a step-down instruction was necessary because the instruction "simultaneously pointed in two different directions with respect to the essential element of mens rea."  [Doc. 1] at 30.  As explained, the instruction did not point in two different directions; it pointed only to reckless disregard.

It is not clear how this argument applies here, where the State did not specify inconsistent acts or courses of conduct that caused Andree Garcia's injuries. *See* [Doc. 10-1] at 1.

> **3.      Petitioner has not shown that the admission of Dr. Williamson's testimony concerning injuries in Andree's arms and shoulder infected the entire trial.**

Petitioner argues that the trial court improperly admitted testimony from Dr. Williamson that she found abnormalities in Andree's arms and shoulder. [Doc. 1] at 34. Petitioner contends that this evidence was irrelevant and prejudiced him because injuries to the arm or shoulder "do not constitute great bodily harm" as required by § 30-6-1(E). *Id.* The State argues that Petitioner procedurally defaulted this claim and that it does not constitute a federal constitutional violation.

The Court should reject this claim because even if Petitioner did not procedurally default it, it does not rise to the level of a federal constitutional violation. "Federal habeas review is not available to correct state[-]law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999). Petitioner has not shown that a mere admission of irrelevant or prejudicial evidence amounts to a violation of the federal Constitution or federal laws. *See Leatherwood*, 861 F.3d at 1043. To state a violation of the federal Constitution, the admission of evidence must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Willingham v. Mullin*, 296 F.3d 917, 928 (10th Cir. 2002) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)). Here, the State presented evidence that Andree suffered far worse injuries than arm or shoulder injuries, including subdural hematoma and severe intestinal injury. *See* [Doc. 11-1] at 87–88; [Doc. 11-4] at 33. Even if evidence that he suffered other, less

severe injuries prejudiced Petitioner, I do not recommend finding that this prejudice fatally infected the entire trial—and Petitioner fails to argue as much.

**4.   Because no errors occurred, the doctrine of cumulative error does not apply.**

Finally, Petitioner argues that the Court "should examine whether the cumulative impact of these errors was so prejudicial as to deprive [him] of a fair trial." [Doc. 1] at 35. The doctrine of cumulative error, however, applies only when there are two or more errors. *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 915 (10th Cir. 2019). Because Petitioner fails to show that two or more errors occurred, I recommend rejecting his claim of cumulative error.

## CONCLUSION

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus [Doc. 1] be **DENIED with prejudice**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**